Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

R. Charles Henn Jr. (admitted *pro hac vice*)
chenn@kilpatricktownsend.com
Charles H. Hooker III (admitted *pro hac vice*)
chooker@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Facsimile: 404.815.6555

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, a Delaware corporation; and **ADIDAS AG**, a foreign entity, <br><br> Plaintiffs, <br><br> v. <br><br> **COUGAR SPORT, INC.**, a New York corporation, <br><br> Defendant. | No. 3:15-cv-01856-SI <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK** <br><br> By Plaintiffs adidas America, Inc. and adidas AG |

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................ 1

II.  RELEVANT FACTS ................................................................................................... 3

     A.   All Of adidas's Relevant Witnesses And Documents Are In This Judicial
          District ........................................................................................................... 3

     B.   The Southern District Of New York Already Has Rejected Many Of The
          Arguments Cougar Sport Raises In The Present Motion ...................................... 4

     C.   Cougar Sport Regularly And Purposefully Directs Actions Toward Oregon
          And This Judicial District ...................................................................................... 5

III. ARGUMENT .............................................................................................................. 6

     A.   Cougar Sport Is Subject To Personal Jurisdiction In Oregon For Its
          Infringement And Dilution Of adidas's Famous Three-Stripe Mark .................... 6

          1.   Cougar Sport Has Purposely Directed Activities At Oregon ................... 9

               a.   The Effects Of Cougar Sport's Infringing Conduct Have
                    Harmed adidas In Oregon ............................................................. 10

                    (i)    Cougar Sport Intentionally Has Marketed And Sold
                           Its Infringing Products To Oregon Residents And
                           Regularly Has Invoiced Ross In Oregon ......................... 11

                    (ii)   Cougar Sport's Conduct Was Expressly Aimed At
                           Oregon ........................................................................... 12

                    (iii)  The Effects Of Cougar Sport's Conduct Have Been
                           Felt By adidas In Oregon ................................................. 14

               b.   Cougar Sport Has Placed Into The Stream Of Commerce
                    Infringing Merchandise Sold In Oregon ...................................... 15

          2.   adidas's Claims Arise Out Of And Relate Directly To Cougar
               Sport's Contacts With Oregon ................................................................. 16

          3.   Exercising Personal Jurisdiction Over Cougar Sport Is Reasonable ....... 17

     B.   Venue Is Proper In This Judicial District ............................................................. 20

     C.   This Case Should Not Be Transferred, Particularly Where The Southern
          District Of New York Already Has Declined To Adjudicate This Dispute ........ 21

          1.   adidas's Choice Of Forum Should Not Be Disturbed .............................. 22

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2.  The Relative Sizes Of The Companies Disfavors Transfer ..................... 22

3.  The Private Factors Weigh In Favor Of The District Of Oregon ........... 24

    a.  Witness Availability And Access To Documents ....................... 25

    b.  Other Private Considerations ...................................... 27

4.  The Public Factors Weigh In Favor Of The District Of Oregon ............. 27

    a.  Administrative Difficulties Flowing From Court Congestion ................................................... 28

    b.  Interest In Having Localized Controversies Decided At Home ....................................................... 28

    c.  The Interest Of The Law That Governs ..................................... 29

    d.  The Unfairness Of Burdening Citizens In An Unrelated Forum With Jury Duty ............................................ 29

IV. CONCLUSION .......................................................... 30

ii-  OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
     LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE,
     OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE

21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## Cases

*Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc.*, 588 F. Supp. 2d 935 (S.D. Ind. 2008) ................................................................................................................ 28

*Amini Innovation Corp. v. JS Imports Inc.*, 497 F. Supp. 2d 1093 (C.D. Cal. 2007) .................. 15

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ........................................................................ 8

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) ......................... 15

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ....................... 20

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) ........................................................... 10

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) ......................... 16

*Buckman v. Quantum Energy Partners IV, LP*, No. 07-CV-1471-BR, 2008 WL 2235234 (D. Or. May 29, 2008) ............................................................................................... 29

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .......................................................... passim

*Calder v. Jones*, 465 U.S. 783 (1984) ...................................................................................... 12

*Capsugel Belgium NV et al v. Bright Pharma Caps, Inc. et al*, No. 3:15-cv-321-PK, 2015 WL 7185463 (D. Or. Nov. 13, 2015) ................................................................... 7, 8, 11, 21

*Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126 (9th Cir. 1995) ........................................... 23

*Castro v. DS Waters of Am., LP*, No. CV-06-979-HU, 2007 WL 1432026 (D. Or. May 11, 2007) ........................................................................................................... 11

*CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004) ...................................... 23

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds, Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ............................................................................................ 14

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, No. 3:15-cv-00064-HZ, 2015 WL 3986148 (D. Or. June 29, 2015) .............................................. passim

*Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979) ................... 27, 31

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ...................................... 11, 18

*Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786 (9th Cir. 1987) ............................................. 24

iii-    OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
        LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE,
        OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE

21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Cougar Sport, Inc. v. adidas America, Inc.*, No. 15 Civ. 07676 (JSR) (S.D.N.Y. Oct. 23, 2015) ............................................................................................................................... 25

*Cummings v. W. Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144 (D. Ariz. 2001) ............................ 11

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ......... 26, 30, 31, 35

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ........................................................ passim

*E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465 (E.D. Cal. 1994) ......................... 26, 31

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888 (9th Cir. 1996) .......................... 7

*Flavor Organics, Inc. v. Aalta Organic Food Co., Inc.*, No. CV-01-298 ST, 2002 WL 31478148 (D. Or. April 22, 2002) ...................................................................................... 26, 33

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986)... passim

*Ill. v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010) ................................................................... 16

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................................... 8

*Jamison v. Olin Corp.*, No. 03-1036-KI, 2004 WL 1098940 (D. Or. May 14, 2004) .................. 11

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .................................................... 27

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ......................................................... 17, 18

*Ledalite Architectural Prods. v. Pinnacle Architectural Lighting Inc.*, No. 08-CV-558-SLC, 2009 WL 54239 (W.D. Wis. Jan. 7, 2009) ....................................................................... 15

*MCA Records, Inc. v. Charly Records Ltd.*, 108 F.3d 338, 1997 WL 76173 (9th Cir. 1997) ........................................................................................................................... 18, 21

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) ......................................................................... 9

*Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675 (9th Cir. 2000) .............................. 14

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002) ............................ 10, 22

*Oregon Precision Indus., Inc. v. Int'l Omni-Pac Corp.*, 889 F. Supp. 412 (D. Or. 1995) 26, 29, 33

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ...................................... passim

*Park Inns Int'l, Inc. v. Pac. Plaza Hotels, Inc.*, 5 F. Supp. 2d 762 (D. Ariz. 1998) .................... 25

iv- OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Patent Enforcement Grp., LLC v. Chassis Tech, LLC*, No 3:11-CV-925-BR, 2012 WL
     12678 (D. Or. Jan. 3, 2012) .............................................. 13, 19

*Raffaele v. Compagnie Generale Maritime, S.A.*, 707 F.2d 395 (9th Cir. 1983)......................... 23

*Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364 (N.D. Ga. 2013) .................................... 16

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .................................... 16, 17

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).................................. 21

*Signalisation Ver-Mac, Inc. v. Addco Mfg., Inc.*, No. 05-707 PK, 2006 WL 6247892 (D.
     Or. Feb. 21, 2006).............................................................................................................. 26

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) ............................... 23, 24

*STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988)........................................... 32, 33

*Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, 105 F. Supp. 2d 1142, 1146 (D. Or. 2000).. 7, 16, 21

*Unicru, Inc. v. Brenner*, No. Civ. 04-248-MO, 2004 WL 785276 (D. Or. Apr. 13, 2004) .......... 33

*Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353 (N.D. Cal. 2007)........................ 31, 33, 36

*Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886 (1st Cir. 1977) .................................. 18

*Vestas-Am. Wind, Tech., Inc. v. Beaird Co., Ltd.*, Civ. No. 07-1651 PK, 2008 WL
     4164551 (D. Or. Sept 3, 2008)............................................................................... 29, 32, 35

*Wilwerding v. Edwards*, No. 08-3025-CL, 2008 WL 4388713 (D. Or. Sept. 26, 2008)........ 27, 29

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)....................................... 16, 19

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'antisemitisme*, 433 F.3d 1199 (9th Cir.
     2006) ........................................................................................................... 11, 17, 20

**Statutes**

15 U.S.C. § 1114............................................................................................................ 29

15 U.S.C. § 1125............................................................................................................ 29

28 U.S.C. § 1391(b)(2) ................................................................................................ 2, 20

28 U.S.C. § 1404............................................................................................................ 5

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**Other Authorities**

15 Wright, Miller, & Cooper, FED. PRACTICE & PROC. § 3851 (3d ed. 2015) ............................ 26

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:7 (4th ed. 2008) ................................................................................................................................................ 10

**Rules**

ORCP 4 ................................................................................................................................................ 7

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Plaintiff adidas America, Inc. ("adidas America") and plaintiff adidas AG ("adidas AG") (collectively, "adidas") respectfully submit this Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Transfer of this Case to the Southern District of New York (the "Motion") filed by defendant Cougar Sport, Inc. ("Cougar Sport").

## I.     INTRODUCTION

Cougar Sport already has attempted to litigate this dispute in the United States District Court for the Southern District of New York.  One day before adidas filed the present lawsuit, and in direct response to adidas's cease and desist letter advising that adidas intended to file suit in the District of Oregon absent an informal resolution of the parties' dispute, Cougar Sport brought an anticipatory declaratory judgment action, styled *Cougar Sport, Inc. v. adidas America, Inc. et al.*, No. 15-cv-7676, in the Southern District of New York (the "New York Action").  adidas moved to dismiss the New York Action as an improper anticipatory filing; and in response to adidas's motion to dismiss, Cougar Sport argued, *inter alia*, that New York was a more convenient forum than Oregon to litigate the parties' dispute, and that the interests of justice favored litigating the dispute in New York.  The Honorable Jed S. Rakoff rejected these and the other arguments raised by Cougar Sport for keeping the case in New York.  Judge Rakoff dismissed the New York Action, thereby allowing the parties' dispute to be litigated in the District of Oregon—the chosen forum of adidas, the true plaintiff.

Now, remarkably, Cougar Sport brings the current Motion seeking to send this case back to the Southern District of New York, after that Court already has dismissed it.  Cougar Sport's attempt to take a second bite at the apple is misplaced.  Indeed, each argument raised by Cougar Sport for sending this case back to New York is fundamentally flawed.

First, there is no merit to Cougar Sport's argument that this Court lacks personal jurisdiction over it; rather, the facts plainly show that Cougar Sport is subject to personal jurisdiction in Oregon.  Cougar Sport admits it has contacts with Oregon in the form of routinely

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

mailing invoices to Ross Stores, Inc. ("Ross") in Portland, Oregon, and selling its products into Oregon—both directly and through other retailers selling its "2 Pipe/2 Stripe" infringing apparel, including Ross, Burlington Coat Factory, and Amazon.com. Beyond these sales, Cougar Sport's website boasts that sales of its 2 Pipe/2 Stripe apparel have "grown nationwide" and that the infringing apparel can be found "online and in popular retail chains such as Burlington Coat Factory, Dr. Jay's, V.I.M, Zulily.com, and DrJays.com." Additionally, Cougar Sport markets and advertises its infringing apparel in Oregon through these outlets as well as through its own website *www.cougarsportinc.com*, and the websites of other retailers (including Amazon.com, Boscovs.com, and eBay.com), all of which are readily available to consumers in Oregon.

Second, there is no merit to Cougar Sport's argument that the District of Oregon is an improper venue. Rather, adidas properly pleaded that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), stating "a substantial part of the acts or omissions giving rise to adidas's claims occurred in this District." ECF No. 1, ¶ 6. Again, Cougar Sport concedes that a substantial part of its infringing conduct has transpired in Oregon. Cougar Sport sends invoices to Ross in Portland, Oregon, thereby collecting from Ross the very ill-gotten profits which adidas claims should be disgorged in this action. Cougar Sport also sells its infringing 2 Pipe/2 Stripe products directly to Oregon consumers and through retailers such as Ross and Burlington Coat Factory, which have retail outlets in Portland, Oregon.

Third, Cougar Sport's last-ditch transfer argument should be rejected. The Southern District of New York already has rejected Cougar Sport's convenience arguments, and that Court is demonstrably *not* the more convenient forum to adjudicate the parties' dispute. As an initial matter, the trademark infringement harm caused by Cougar Sport is experienced most acutely by adidas in Oregon, where adidas has its North American headquarters. Moreover, because adidas's North American headquarters are in Portland, Oregon, all of adidas's anticipated witnesses are located in the greater Portland area. Similarly, all of adidas's relevant documents (many of which are maintained in paper form at adidas's outside counsel's office in Portland) are

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

located in Oregon.  To litigate this case in New York, adidas would be required to transport considerably more witnesses and more documents across the country than Cougar Sport will need to transport to litigate the case in Oregon.  Indeed, Cougar Sport admits that it will have fewer witnesses and fewer documents than adidas.  Lastly, Cougar Sport's reliance on decades-old cases in which adidas has been involved in the Southern District of New York is misplaced.  Not only do many of those cases pre-date adidas's move—over 20 years ago—of its North American headquarters from the greater New York City area to Oregon, but those cases in no way support the proposition that New York is a more convenient forum than Oregon to adjudicate the present dispute.  In fact, the opposite is plainly true; that is, Oregon is a far more convenient forum to adjudicate this dispute.  And there is no reason whatsoever to disturb adidas's chosen forum, which is entitled to substantial deference.

## II.    RELEVANT FACTS

**A.    All Of adidas's Relevant Witnesses And Documents Are In This Judicial District**

adidas America, the principal distributor of adidas AG's ADIDAS-brand merchandise, is headquartered and maintains its principal place of business in Portland, Oregon.  *See* Declaration of Sara M. Vanderhoff ("Vanderhoff Decl.") ¶ 2, filed concurrently.  As its principal U.S. location, Portland, Oregon is the hub for adidas's U.S. sales, brand marketing, product marketing, product design, public relations, distribution, and licensing of and for ADIDAS-branded merchandise, including goods bearing the famous Three-Stripe Mark, which is at the center of this dispute.  *Id.*

As its home, adidas has appeared as a plaintiff (or counterclaimant) in over fifty-five trademark cases during the last decade, with one of those cases (*adidas v. Payless ShoeSource*) going all the way through trial.  *Id.* ¶ 3.  Because of this extensive litigation history in this Court, adidas maintains an entire room full of documents and other materials related to its Three-Stripe Mark at the Portland, Oregon offices of Perkins Coie LLP.  *See* Declaration of Stephen M.

3-    OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
      PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
      ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
      DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Feldman ("Feldman Decl.") ¶ 2, filed concurrently.[1]  All of adidas's witnesses who would be deposed in this case during discovery or who would testify at trial work and live in the greater Portland area.  *See* Vanderhoff Decl. ¶ 4.  For example, during the *Payless* case, sixteen (16) of the seventeen (17) adidas employees who were deposed had their depositions taken in Portland, Oregon, and eight (8) of the nine (9) fact witnesses that adidas called at trial lived in Portland at the time.  *Id.*  (The one adidas trial witness not living in Portland was a former Portland resident who had been transferred to adidas AG's office in Germany.  *Id.*)

**B.    The Southern District Of New York Already Has Rejected Many Of The Arguments Cougar Sport Raises In The Present Motion**

Shortly after adidas filed the present action, adidas moved to dismiss Cougar Sport's New York Action on the basis that it was an improper anticipatory declaratory judgment action, and none of the convenience factors raised by Cougar Sport warranted keeping the case in the Southern District of New York.  Specifically, in both adidas's opening brief and reply, adidas argued that the District of Oregon is the more convenient forum for adjudicating the parties' dispute, that Cougar Sport would not be prejudiced by proceeding in the District of Oregon, and that proceeding in this Court would best serve the interests of justice.  *See* Feldman Decl. ¶ 3, Exs. 1-3.

Among other things, adidas offered the following reasons for litigating this dispute in the District of Oregon:  adidas's North American headquarters are in Portland, Oregon, as are the relevant witnesses and documents in this action; adidas's choice of forum is entitled to deference; the District of Oregon is the locus of operative facts in this dispute; and, due to Cougar Sport's bad faith in bringing a patently anticipatory declaratory judgment action, the interests of justice heavily favor allowing the Oregon action to proceed.  *See id.*, Exs. 1, 3.

---

[1]  In total, there are approximately one hundred (100) banker's boxes of documents and other materials, such as product samples, related to the Three-Stripe Mark that are maintained at Perkins Coie's office in Portland, Oregon.  *See* Feldman Decl. ¶ 2.

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In its opposition to adidas's motion to dismiss the New York Action, Cougar Sport argued that the first-to-file rule (and its anticipatory filing exception) were only one factor the Southern District of New York should consider. *See id.*, Ex. 2 at 4. In addition to that factor, Cougar Sport maintained that the convenience factors under 28 U.S.C. § 1404 were of paramount importance. In so doing, Cougar Sport contended: New York was the superior forum (*id.* at 5); Cougar Sport has minimal contacts with Oregon (*id.* at 5-6);[2] the critical evidence is based in New York (*id.* at 6); and adidas previously has litigated in the Southern District of New York and would not be inconvenienced or prejudiced by litigating this case there (*id.* at 7-8).

In other words, Cougar Sport raised in the New York Action many of the very same arguments it now brings before this Court. Judge Rakoff did not find Cougar Sport's arguments persuasive. Nor should this Court.

**C.      Cougar Sport Regularly And Purposefully Directs Actions Toward Oregon And This Judicial District**

Cougar Sport's own admissions and the evidence of record make clear that Cougar Sport regularly and purposefully directs its conduct toward Oregon. To begin with, Cougar Sport admits that it routinely sends invoices to Ross in Portland, Oregon in order to collect revenues and profits from the sales of the very products at issue in this case. *See* ECF No. 30, Declaration of Raymond Dayan ("Dayan Decl.") ¶ 11. Cougar Sport further admits that it has sold the apparel at issue in this case directly to Oregon residents. *See id.* ¶ 8. And it is plain that Cougar Sport markets and advertises its infringing apparel to Oregon consumers through its interactive retail website *www.cougarsportinc.com*, which is readily accessible in Oregon. *See* Feldman Decl. ¶ 5, Ex. 5. The website also provides for shipping purchases throughout the United States, including to Oregon. *See id.* Indeed, in response to an order placed by Ms. Jeni Zuercher (an adidas employee who was located in Oregon at the time of the order), Mr. Dayan admits that

---

[2] Notably, although it had an opportunity to do so, Cougar Sport did not argue in the New York Action that the District of Oregon lacked personal jurisdiction over it or that the District of Oregon was an improper venue to adjudicate the parties' dispute.

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Cougar Sport shipped 2 Pipe/2 Stripe product to adidas, and thus was aware that adidas is headquartered in Oregon.  *See id.* ¶ 4, Ex. 4 (Declaration of Raymond Dayan submitted in the New York Action ("Dayan New York Decl.")) at Ex. A.

Beyond these facts, Cougar Sport's website boasts that sales of its infringing 2 Pipe/2 Stripe apparel have "grown nationwide."  *See* Feldman Decl., Ex. 5.  The website further states that the infringing apparel can be found "online and in popular retail chains such as Burlington Coat Factory, Dr. Jay's, V.I.M, Zulily.com, and DrJays.com."  *Id.* ¶ 8.  Beyond these retailers, Cougar Sport has sold its 2 Pipe/2 Stripe apparel through Ross, Amazon.com, and Boscovs.com.  *Id.* ¶ 6, Ex. 6; Dayan Decl. ¶¶ 8, 11; Dayan New York Decl. ¶¶ 11, 13. Moreover, all of the websites through which Cougar Sport sells its products are available to Oregon residents, and both Burlington Coat Factory and Ross maintain retail stores in Portland, Oregon.  *See* Feldman Decl. ¶¶ 7-8, Exs. 7-9.

Furthermore, Cougar Sport's infringing merchandise has been made available for purchase through Cougar Sport's store on ebay.com.  *See id.* ¶ 10, Ex. 11.  Indeed, based on the advertisements for its eBay offerings made on Cougar Sport's Facebook page, Cougar Sport appears to have regularly advertised and sold its infringing apparel through eBay, which of course is readily available to Oregon consumers and offers nationwide shipping.  *See id.* ¶¶ 9-10, Exs. 10, 11.

## III.    ARGUMENT

### A.    Cougar Sport Is Subject To Personal Jurisdiction In Oregon For Its Infringement And Dilution Of adidas's Famous Three-Stripe Mark

This Court's exercise of personal jurisdiction over Cougar Sport is well supported by Cougar Sport's:  (i) admitted sales directly to consumers in Oregon; (ii) sales through retailers with stores in Oregon, such as Ross and Burlington Coat Factory; (iii) marketing and sales through its website and Facebook page; (iv) marketing and sales through other retailers' websites—including Boscovs.com, Amazon.com, and eBay.com—all of which are available to

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Oregon consumers; (v) regular invoicing of Ross in Portland, Oregon; and (vi) harm inflicted on adidas in Oregon. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) (rejecting "the notion that personal jurisdiction might turn on 'mechanical' tests") (internal citation omitted).

Personal jurisdiction is proper when the forum state's long-arm statute confers jurisdiction and its exercise comports with constitutional due process. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). "Oregon's long-[arm] statute permits assertions of personal jurisdiction to the full extent allowed under the federal constitution." *Capsugel Belgium NV et al v. Bright Pharma Caps, Inc. et al*, No. 3:15-cv-321-PK, 2015 WL 7185463, at *2 (D. Or. Nov. 13, 2015) (citing ORCP 4); *see also Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, 105 F. Supp. 2d 1142, 1146 (D. Or. 2000). Thus, the analysis "collapses into a single framework," and the only issue before this Court is whether the exercise of personal jurisdiction in this case comports with due process. *Tech Heads*, 105 F. Supp. 2d at 1146.

To defeat a motion to dismiss for lack of personal jurisdiction, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal citations omitted) (reversing dismissal); *see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, No. 3:15-cv-00064-HZ, 2015 WL 3986148, at *2 (D. Or. June 29, 2015) ("If the parties have not conducted discovery, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction."). Moreover, in assessing the relevant facts, "the complaint's uncontroverted factual allegations must be accepted as true and any factual conflicts in the parties' declarations must be resolved in the plaintiff's favor." *Capsugel Belgium*, 2015 WL 7185463, at *3 (quotation marks and citation omitted).

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The fundamental personal jurisdiction rubric is one of "*minimum* contacts," *not* "pervasive" contacts. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (emphasis added);[3] *Columbia Sportswear*, 2015 WL 3986148, at *2 ("The Due Process Clause 'protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established <u>no</u> meaningful contacts, ties, or relations.'") (quoting *Burger King*, 471 U.S. at 471-72 (emphasis added). Moreover, over the history of personal jurisdiction jurisprudence, "a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents," as commercial transactions increasingly touch parties in numerous states, and as "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222-23 (1957). Thus, adidas must clear a low bar to avoid dismissal for lack of personal jurisdiction.

The Ninth Circuit has established a three-factor test for determining when the exercise of specific jurisdiction[4] over a nonresident defendant comports with constitutional due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

---

[3] Cougar Sport relies heavily on *International Shoe*. This reliance, however, is undercut by the fact that the U.S. Supreme Court in that case found that the state of Washington *had personal jurisdiction* over a Delaware corporation with its principal place of business in Missouri because the company in question "rendered itself amenable to suit upon obligations arising out of the activities of its salesmen in Washington . . . ." 326 U.S. at 321. Accordingly, *International Shoe* supports adidas's contention that Cougar Sport must answer this suit in Oregon because this case arises out of Cougar Sport's sales, advertising, shipments, and profit-gathering activities in Oregon.

[4] A court may exercise general or specific jurisdiction over a nonresident defendant. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). While Cougar Sport's activities may well rise to the level of "continuous and systematic" contacts necessary to support a finding of general jurisdiction, specific jurisdiction is sufficient and is certainly appropriate under the facts and allegations presented in this case.

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (emphasis added).

Notably, a plaintiff is not even required to satisfy *all* of these factors: "Although Ninth Circuit law formerly required a plaintiff to demonstrate each of these three factors to establish specific jurisdiction, . . . [the Ninth Circuit] has, in light of subsequent Supreme Court precedent, adopted a more 'flexible approach.'" *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188 n.2 (9th Cir. 2002) (internal citations omitted). "Jurisdiction may be established with a lesser showing of minimum contacts 'if considerations of reasonableness dictate.'" *Id.* (quoting *Haisten*, 784 F.2d at 1397). "'Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable.'" *Id.* (quoting *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986)).

Here, all three specific jurisdiction factors are met. Cougar Sport has, in multiple ways, purposely directed its infringing activities at Oregon. adidas's claims arise directly out of Cougar Sport's forum-related activities. And the exercise of jurisdiction is abundantly reasonable. Cougar Sport's contacts with Oregon and this judicial district have been more than sufficient to support this Court's exercise of specific jurisdiction.

## 1. Cougar Sport Has Purposely Directed Activities At Oregon

Courts have adopted two related tests for analyzing whether a defendant purposely has directed activities toward a forum state:[5] (1) the "effects" test, *see, e.g., Haisten*, 784 F.2d

_____

[5] In its Memorandum in Support of its Motion to Dismiss, Cougar Sport conflates the concepts of "purposeful availment" and "purposeful direction" in asserting that this Court may not exercise personal jurisdiction over Cougar Sport. *See, e.g.*, ECF No. 29 at 6. But "'[p]urposeful availment' and 'purposeful direction' are two distinct concepts: a purposeful availment analysis is most often used in contract actions, while a purposeful direction analysis is most often used for actions in tort." *Castro v. DS Waters of Am., LP*, No. CV-06-979-HU, 2007 WL 1432026, at *2 (D. Or. May 11, 2007); *see also Capsugel Belgium*, 2015 WL 7185463, at *6 (applying purposeful direction test in the context of a trademark infringement action); *Cummings v. W. Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1153 (D. Ariz. 2001) ("The Ninth Circuit has

9- OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK

21184-0110/LEGAL128708984.1

at 1397; and (2) the "stream of commerce" test, *see*, *e.g.*, *Jamison v. Olin Corp.*, No. 03-1036-KI, 2004 WL 1098940, at *4-5 (D. Or. May 14, 2004). Although only one is necessary to meet the purposeful direction requirement, Cougar Sport's conduct satisfies both of these tests.

    a.  **The Effects Of Cougar Sport's Infringing Conduct Have Harmed adidas In Oregon**

  In trademark infringement and other actions sounding in tort, this Court principally relies on the effects test to evaluate purposeful direction. *See Capsugel Belgium*, 2015 WL 7185463, at *6. Under the effects test, a plaintiff need only show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)); *see also Dole Food*, 303 F.3d at 1111 (purposeful direction "is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state") (internal citations and quotation marks omitted).

  Here, Cougar Sport concedes that it has advertised its infringing products, and on multiple occasions has sold and shipped such products, to Oregon residents. *See* Dayan Decl. ¶ 8. Significantly, whenever a defendant purposefully directs its conduct toward the forum state, thereby harming the plaintiff, personal jurisdiction is proper, even in the absence of physical contacts with that state. *See Burger King*, 471 U.S. at 476 (personal jurisdiction proper where defendant's conduct in Michigan harmed Florida plaintiff); *Haisten*, 784 F.2d at 1397 (jurisdiction proper "over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state") (emphasis added); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (in tort cases, purposeful direction is established if "the defendant's conduct is aimed at or has an effect in the forum

held that a district court should 'apply different purposeful availment tests to contract and tort cases.'") (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993)). adidas's trademark infringement claims arise in tort. *See generally* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:7 (4th ed. 2008).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

state"). In this case, Cougar Sport has intentionally directed actions toward Oregon and, additionally, has maintained significant contacts with this state. Therefore, the exercise of personal jurisdiction is abundantly proper.

<blockquote>

(i) **Cougar Sport Intentionally Has Marketed And Sold Its Infringing Products To Oregon Residents And Regularly Has Invoiced Ross In Oregon**

</blockquote>

"[T]hrough both direct sales of infringing and other products in the state and its sales to national vendors with outlets in Oregon," Cougar Sport has committed intentional acts aimed at Oregon. *Columbia Sportswear*, 2015 WL 3986148, at *3 (denying motion to dismiss for a claimed lack of personal jurisdiction or, in the alternative, to transfer); *see also* Dayan Decl. ¶ 8. The facts in *Columbia Sportswear* are analogous to those here. In that case, the defendant, Seirus, claimed that it had not purposefully directed conduct toward Oregon because it only sold $798 worth (or 0.0014% of its total sales) of its allegedly infringing products to businesses having retail stores in Oregon; and Seirus claimed that those sales amounted to "only an 'attenuated affiliation' that cannot support personal jurisdiction." *Columbia Sportswear*, 2015 WL 3986148, at *3. This Court rejected that argument and held that personal jurisdiction was proper:

> *The value of Seirus's direct sales in Oregon may be small, but there is no dispute that Seirus has sold products directly into the forum, and that Columbia's suit arises out of or relates to those sales.* That is all that is required for Columbia to make a *prima facie* showing that the Court has personal jurisdiction over Seirus.

*Id.* (emphasis added).

Here, as in *Columbia Sportswear*, Cougar Sport makes the unavailing claim that it has sold only a small quantity of products directly to Oregon consumers.[6] *See* Dayan Decl. ¶ 8. This Court, however, has *squarely rejected* that argument. *See Columbia Sportswear*, 2015 WL 3986148, at *3; *accord Patent Enforcement Grp., LLC v. Chassis Tech, LLC*, No 3:11-CV-925-

---

[6] Cougar Sport's records apparently go back for only four (4) years to 2011. *See* Dayan Decl. ¶ 10. Thus, Cougar Sport may well have sold products to Oregon consumers prior to 2011.

11- OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

BR, 2012 WL 12678, at *5 (D. Or. Jan. 3, 2012) (finding direct sales into Oregon totaling less than $1,000 over a twelve year span sufficient to sustain personal jurisdiction).

As if that were not enough, Cougar Sport has additional, significant contacts with Oregon which were not present in *Columbia Sportswear*. Among other things, Cougar Sport sends invoices to Ross in Portland, Oregon, *see* Dayan Decl. ¶ 11, and Cougar Sport sells its products through Ross and Burlington Coat Factory, both of which have retail stores in Portland. *See* Feldman Decl. ¶ 7, Exs. 7, 8. Moreover, Cougar Sport states on its website that its sales are "national," *see* Feldman Decl., Ex. 5, and it is clear that Cougar Sport markets its products nationally through its website, its Facebook page, and other retailers' websites, including Amazon.com, ebay.com, and Boscovs.com, *id.* ¶¶ 6, 8-10, Exs. 6, 9-11.

On these bases, adidas alleged that Cougar Sport intentionally infringed adidas's trademark rights in Oregon. *See* ECF No. 1, ¶¶ 25, 30, 33; *see also Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000) (intentional act requirement satisfied where plaintiff alleged that defendant intentionally infringed plaintiff's trademark); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) (noting that plaintiff "alleged, and the district court found, that [defendant] willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the Central District"). Cougar Sport's infringing conduct in Oregon, therefore, manifestly satisfies the "intentional act" prong of the effects test.

### (ii)     Cougar Sport's Conduct Was Expressly Aimed At Oregon

The aiming prong of the effects test is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("express aiming" at California when defendant sent letter to Virginia with alleged intent of disrupting plaintiff's California business), *holding modified on other grounds by*

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Yahoo!*, 433 F.3d at 1207; *Amini Innovation Corp. v. JS Imports Inc.*, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007) (specific jurisdiction proper when out-of-state defendant intentionally infringed plaintiff's intellectual property).[7]

Cougar Sport concedes its awareness of adidas America's presence in Portland, Oregon. *See* Dayan New York Decl., Ex. A. Among other things, Cougar Sport knew to send sample products and its pre-litigation letter to adidas's headquarters in Portland, Oregon. *Id.* Moreover, for the reasons addressed above, Cougar Sport undoubtedly has aimed its conduct at Oregon. *See*, *e.g.*, Dayan Decl. ¶ 8. In addition to the reasons already discussed, courts have found a defendant's national sales and marketing efforts through websites and social media pages to be significant in assessing where the defendant aims its conduct. In *Rice v. PetEdge, Inc.*, for example, the district court held: "If defendant wished to avoid litigation in [the forum state], it could have organized its website so that it wasn't selling its products in this state." 975 F. Supp. 2d 1364, 1371-72 (N.D. Ga. 2013) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Rejecting the same kind of "small amount of goods sold" argument proffered by Cougar Sport here, the *PetEdge* court reasoned that "a defendant making this argument 'wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure.'" *Id.* at 1372 (quoting *Ill. v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010)).

The Ninth Circuit has applied the same kind of reasoning in holding that the maintenance of a website, coupled with "'something more'—namely, conduct directly targeting the forum—is sufficient to confer personal jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). And this Court has held that when a defendant maintains a

---

[7] *See also Ledalite Architectural Prods. v. Pinnacle Architectural Lighting, Inc.*, No. 08-CV-558-SLC, 2009 WL 54239, at *2 (W.D. Wis. Jan. 7, 2009) (despite no evidence showing "that defendant ever sold its products directly in Wisconsin," personal jurisdiction was held proper over Colorado defendant in Wisconsin because a third-party Wisconsin contractor's website listed defendant's products as available through the third-party).

13- OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK

21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

nationally accessible website and receives contacts from a forum state through the website, exercising personal jurisdiction is proper. *See Tech Heads*, 105 F. Supp. 2d at 1150-51.

In *Tech Heads*, the defendant claimed personal jurisdiction in Oregon was not proper because it was a Virginia staffing agency which reviewed resumes of potential employees for companies for job placement purposes. *Id.* at 1145. It further claimed that it did 95% of its business in Virginia, with its remaining business occurring in Maryland and North Carolina. *Id.* This Court, however, noted that <u>one</u> potential employee, an Oregon resident, sent a resume to the defendant through defendant's website. *Id.* On the strength of that single contact, coupled with the fact that the defendant's website was available in Oregon, the Court found personal jurisdiction proper. *Id.* at 1150-51. *See also Rio Props.*, 284 F.3d at 1020-21 (finding personal jurisdiction proper over defendant where defendant maintained a website and offered its services in the forum state through advertising in that state).

As in all of these cases, Cougar Sport undoubtedly has aimed its conduct at Oregon. It has sold products directly to Oregon consumers. *See*, *e.g.*, Dayan Decl. ¶ 8. It has sold products to Oregonians through other retailers and websites, and it has advertised, marketed, and sold its products to Oregon residents through its own website and social media page. *See, e.g.*, Feldman Decl., Exs. 5, 10. Accordingly, Cougar Sport's activities amply satisfy the express aiming requirement of the effects test.

    **(iii)**  **The Effects Of Cougar Sport's Conduct Have Been Felt By adidas In Oregon**

To satisfy the third requirement of the effects test—*i.e.*, that the defendant caused harm to the plaintiff in the forum state—it is not necessary to discern where the brunt of the harm occurred; in fact, the "brunt" of the harm "need not be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1207 ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.") (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773, 780-81 (1984) (upholding personal jurisdiction

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

where plaintiff suffered only "a small proportion of her total claimed injury" within the forum state)).  *See also Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886, 892 (1st Cir. 1977) (fact that defendant's sales in forum state were less than 0.5% of total sales was held irrelevant). Indeed, suit may be brought in any forum with which defendant has *minimum* contacts, and recovery may be sought for damages suffered in other forums.  *See Keeton*, 465 U.S. at 780-81.[8]

In this case, adidas has alleged that Cougar Sport's merchandise has infringed adidas's trademark rights.  *See* ECF No. 1, ¶¶ 5-6, 29-37.  Cougar Sport does not dispute that it has sold its merchandise in Oregon or that it has conducted other related business (including collecting directly related revenues) in Oregon.  *See* Dayan Decl. ¶¶ 8, 11.  Accordingly, adidas experienced Cougar Sport's infringement in Oregon, where adidas America is headquartered, and this Court therefore has jurisdiction over Cougar Sport.  *See*, *e.g.*, *Panavision*, 141 F.3d at 1322 (holding that, although alleged infringement occurred over the internet, plaintiff experienced injury at its principal place of business in California).  Because Cougar Sport engaged in infringing activity in Oregon, and adidas felt the injury in Oregon, personal jurisdiction over Cougar Sport in Oregon is entirely proper.  *See MCA Records Inc. v. Charly Records Ltd.*, 108 F.3d 338, 1997 WL 76173, at *8 (9th Cir. 1997) (injury is borne by a "trademark owner where the owner resides").

### b. Cougar Sport Has Placed Into The Stream Of Commerce Infringing Merchandise Sold In Oregon

In addition to the effects test supporting personal jurisdiction, exercising jurisdiction is proper because Cougar Sport has placed into the stream of commerce merchandise it knew or should have known would ultimately be sold in Oregon.  Cougar Sport is therefore subject to this Court's jurisdiction because it "delivers its products into the stream of commerce with the

---

[8] *See also Dole Food*, 303 F.3d at 1113 ("Our precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business"; collecting cases in which principal place of business has been held to be a locale of the harm); *see generally Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) ("A corporation does not suffer harm in a particular geographic location in the same sense that an individual does.").

15- OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK

21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

expectation that they will be purchased by consumers in" Oregon. *Chassis Tech*, 2012 WL 12678, at *5 (quoting *World-Wide Volkswagen*, 444 U.S. at 298). In addition to its direct sales to consumers in Oregon, Cougar Sport admits that it: sells its products through national retailers, including Ross and Burlington Coat Factory, which have retail stores in Portland, Oregon; has sold its products through Amazon.com, eBay.com, and Boscovs.com, which sell and ship to Oregon residents; and collects revenues from the stream of commerce from Ross's billing department in Portland, Oregon. *See* Feldman Decl., Exs. 5-11.

Cougar Sport argues that it sold only a small amount of its infringing products into Oregon. But, even if this is true, the quantity and volume of sales is irrelevant. Indeed, even minimal revenues from the forum state support jurisdiction under the stream of commerce theory. *See Chassis Tech*, 2012 WL 12678, at *5 (exercising jurisdiction "even though [defendant's] sales have not amounted to significant revenue" because of defendant's direct sales to retailers and wholesalers anticipated to sell to customers in Oregon).

Cougar Sport unquestionably derived and continues to derive ongoing economic benefits from its infringing apparel flowing through the stream of commerce to Oregon. Accordingly, it "knew or should have known that a termination point for products at issue in this lawsuit was Oregon . . . ." *Jamison*, 2004 WL 1098940, at *6. On this basis, Cougar Sport's "conduct and connections with [Oregon] were such that [it] should reasonably have anticipated being brought to court [here]." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).

### 2. adidas's Claims Arise Out Of And Relate Directly To Cougar Sport's Contacts With Oregon

"In a specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc.*, 433 F.3d at 1210-

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

11 (holding personal jurisdiction was proper when there were "very few contacts" but "those few contacts [were] directly related to the suit").

Cougar Sport has extensive and direct contacts with Oregon, including its direct sales to Oregon residents, its sales through retailers it knows are in Oregon, its marketing through several websites, and its billings to Ross.  adidas's claims are *directly related* to these contacts because they involve the very products and profits at the heart of this case.  *See* ECF No. 1, ¶ 5; *Columbia Sportswear*, 2015 WL 3986148, at *3.

Additionally, adidas would not have suffered harm related to Cougar Sport's infringing merchandise but for Cougar Sport's acts.  That is, but for Cougar Sport's manufacturing, offering for sale, and selling at retail and wholesale its infringing apparel throughout the United States (including in Oregon), adidas would not have suffered harm in Oregon.  *See MCA Records, Inc.*, 108 F.3d 338, 1997 WL 76173, at *5.  Accordingly, adidas's claims arise out of Cougar Sport's forum-related acts.  It is therefore plainly apparent that this suit arises out of Cougar Sport's infringing activities aimed both nationally and specifically at Oregon.

### 3. Exercising Personal Jurisdiction Over Cougar Sport Is Reasonable

"After the plaintiff establishes the first two elements, 'the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Capsugel Belgium*, 2015 WL 7185463, at *6 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)[9] and *Burger King*, 471 U.S. at 476-77).  Restated, because adidas has established Cougar Sport's more than minimum contacts with Oregon, "jurisdiction is presumptively reasonable and the burden shifts to [Cougar Sport] to show a

---

[9] Cougar Sport cites *Fred Martin Motor* in its brief.  That case, however, is readily distinguishable.  It involved Fred Martin Motor Company's use of Arnold Schwarzenegger's image and likeness in an advertisement for automobiles that was distributed *only* in Ohio.  *See* 374 F.3d at 799-800.  Mr. Schwarzenegger failed to show that a California court could exercise personal jurisdiction over Fred Martin Motor Company because no evidence showed the advertisement at issue was distributed outside of Ohio, no evidence showed any automobile sales outside of Ohio, and no evidence established any contacts with California relevant to the issues in the case.  *Id.* at 803.  The situation here is fundamentally different.

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

'compelling case' why jurisdiction is unreasonable." *Tech Heads*, 105 F. Supp. 2d at 1152.

And, Cougar Sport faces a heavy burden to contend jurisdiction is unreasonable. *See Burger King*, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").[10] Seven factors are considered in determining reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

Cougar Sport attempts to argue that these factors favor dismissal or transfer. *See* ECF No. 29 at 8-9. In actuality, these reasonableness factors clearly favor this Court's exercise of personal jurisdiction over Cougar Sport.

First, as shown above, Cougar Sport has purposely interjected itself into Oregon by, *inter alia*, selling its products in Oregon, sending invoices to Oregon, selling through retailers with stores in Oregon, and maintaining a website and social media page to market and sell its apparel nationally and in Oregon.

Second, that Cougar Sport may have to travel to Oregon to litigate this matter is simply not a "burden" that would make the exercise of personal jurisdiction unreasonable. Consistently, courts in this Circuit have held that travel, even cross-country travel, does not meaningfully increase a defendant's burden. *See Panavision*, 141 F.3d at 1323 (finding the inconvenience for an Illinois defendant litigating in California insufficiently burdensome to constitute a deprivation

---

[10] Conversely, it is well settled that under the flexible approach employed by the Ninth Circuit that "jurisdiction may be exercised with a *lesser showing of minimum contacts* than would otherwise be required if considerations of reasonableness dictate." *Haisten*, 784 F.2d at 1397; *see also Ochoa*, 287 F.3d at 1189 n.2.

18- OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

of due process) (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995)); *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (finding it not unreasonably burdensome for New York defendant to litigate in Arizona); *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (noting that "modern advances in communications and transportation have significantly reduced the burden of litigating in [a foreign jurisdiction]").

Third, Oregon has "strong interests in protecting its residents from injury and in furnishing a forum where their injuries may be remedied." *Raffaele v. Compagnie Generale Maritime, S.A.*, 707 F.2d 395, 398 (9th Cir. 1983); *see also CE Distrib.*, 380 F.3d at 1112 ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another."). Because adidas's witnesses and evidence are in Oregon, this Court's exercise of personal jurisdiction over Cougar Sport will provide for an efficient resolution of this matter.

Fourth, forcing adidas to litigate outside of this jurisdiction would be burdensome. adidas is based in Oregon, and "[l]itigating in one's home forum is obviously most convenient." *CE Distrib.*, 380 F.3d at 1112; *Jamison*, 2004 WL 1098940, at *7 ("Plaintiff, an Oregon resident, has a substantial interest in litigating this case in his home state . . . . [and] nearly all of the development activity regarding his [intellectual property] occurred in Oregon."). Moreover, absent compelling reasons to the contrary, a plaintiff's choice of forum should be honored. *See Dole Food*, 303 F.3d at 1115.

Finally, Cougar Sport fruitlessly claims that the Southern District of New York is a superior alternative forum for this action. *See* ECF No. 29 at 8. It is not enough for a defendant simply to prefer an alternative forum. In fact, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Sinatra*, 854 F.2d at 1201 (citing *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987)). adidas has alleged violations of the Lanham Act and of Oregon common law, over which this Court has

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

subject matter jurisdiction.  *See* ECF No. 1, ¶¶ 38-60.  "Oregon has an interest in providing a

forum for its residents to litigate [trademark] rights."  *Jamison*, 2004 WL 1098940, at *7

(rejecting Utah-based defendant's contention that Utah was the center of the parties' controversy

and that a Utah court was an adequate alternative forum).  Moreover, Judge Rakoff in the

Southern District of New York already has determined that New York is *not* superior to this

forum.  Accordingly, there is no superior alternative forum for this action.

In light of the above, exercising personal jurisdiction over Cougar Sport is entirely

reasonable.  And the reasonableness of personal jurisdiction reduces adidas's burden under the

first two prongs of the specific-jurisdiction analysis.  *See Burger King*, 471 U.S. at 477

(reasonableness considerations may serve to establish jurisdiction "upon a lesser showing of

minimum contacts than would otherwise be required").  Thus, assessing the reasonableness

factors only strengthens this Court's already clear personal jurisdiction over Cougar Sport.  Any

small burden on Cougar Sport is not constitutionally significant and should in no way preclude

this Court's exercise of jurisdiction.

## B.      Venue Is Proper In This Judicial District

Cougar Sport's contacts with Oregon also override any claim that venue does not lie in

the District of Oregon.  *See Park Inns Int'l, Inc. v. Pac. Plaza Hotels, Inc.*, 5 F. Supp. 2d 762,

766-67 (D. Ariz. 1998) ("Since the court has found that [d]efendants are subject to personal

jurisdiction here, the court will deny their motion to dismiss for improper venue").  adidas

clearly alleged that "[t]he District of Oregon is a proper venue pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the acts or omissions giving rise to adidas's claims

occurred in this District," ECF No. 1, ¶ 6, thereby further supporting the propriety of venue.

Moreover, a superior forum for resolving the dispute between the parties simply does not

exist.  Judge Rakoff already has determined that no overriding factors disfavored the dismissal of

the New York Action, and he already has held that this action may proceed in Oregon.  *See*

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Cougar Sport, Inc. v. adidas America, Inc.*, No. 15 Civ. 07676 (JSR), ECF No. 22 (S.D.N.Y. Oct. 23, 2015). Accordingly, adidas's choice of venue should not be disturbed.

**C.    This Case Should Not Be Transferred, Particularly Where The Southern District Of New York Already Has Declined To Adjudicate This Dispute**

"Absent a *clear and convincing* showing that the balance of convenience strongly favors an alternate forum, discretionary transfers are not favored." *Signalisation Ver-Mac, Inc. v. Addco Mfg., Inc.*, No. 05-707 PK, 2006 WL 6247892, at *5 (D. Or. Feb. 21, 2006) (denying defendant's motion to transfer) (emphasis added). As also recognized by this Court, Cougar Sport bears a "heavy burden of showing that this action should be transferred on the basis of convenience." *Oregon Precision Indus., Inc. v. Int'l Omni-Pac Corp.*, 889 F. Supp. 412, 419 (D. Or. 1995); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); *Flavor Organics, Inc. v. Aalta Organic Food Co., Inc.*, No. CV-01-298 ST, 2002 WL 31478148, at *5 (D. Or. April 22, 2002) (noting that the burden is on the moving party to establish that inconvenience warrants upsetting the plaintiff's choice of forum); *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (noting that the plaintiff's choice of forum should rarely be disturbed).

"The Ninth Circuit has identified a number of public and private interest factors that a district court may consider, including: (1) the plaintiff's choice of forum, (2) the parties' contacts with the forum, (3) convenience to the parties, (4) convenience to the witnesses, (5) availability of compulsory process for non-party witnesses, (6) ease of access to evidence, (7) differences in the costs of litigation in the two forums, (8) familiarity of each forum with the applicable law, (9) local interest in the controversy, and (10) the relative court congestion and time of trial in each forum." *Columbia Sportswear*, 2015 WL 3986148, at *5; *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (denying transfer).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1.      **adidas's Choice Of Forum Should Not Be Disturbed**

The public and private factors neither weigh in Cougar Sport's favor nor warrant a departure from the special deference afforded to adidas in choosing its home forum.  As this Court has made clear:  "The plaintiff's choice of forum is especially given deference where the plaintiff is a resident of the forum in which the action is brought."  *Wilwerding v. Edwards*, No. 08-3025-CL, 2008 WL 4388713, at *3 (D. Or. Sept. 26, 2008).  Significantly, Cougar Sport proffers only a cursory treatment of the transfer factors, devoting only two pages to a superficial treatment of them, and raising arguments already rejected by the Southern District of New York. *See* ECF 29 at 11-12.  Cougar Sport, therefore, has abjectly failed to carry its burden, and it should be foreclosed from raising newly conceived reasons in its reply brief.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("[Defendant] had the burden to justify by particular circumstances that the transferor forum was inappropriate.").

2.      **The Relative Sizes Of The Companies Disfavors Transfer**

Cougar Sport erroneously contends that its smaller size favors transfer.  Cougar Sport is undoubtedly a small company, apparently with only four employees.  *See* Dayan Decl. ¶ 4. adidas does not dispute that it is a much larger company with many more employees and, presumably, many more relevant documents and other materials.  But adidas's choice of forum should not be disturbed merely by virtue of its size.  *See, e.g., Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc.*, 588 F. Supp. 2d 935, 945-47 (S.D. Ind. 2008) (denying a motion to transfer despite the fact that defendant was a much smaller company and litigating in Indiana would cause some disruption to defendant's business operations).

If anything, the larger scale of adidas's operations means that the number of witnesses adidas would have to transport to New York for trial would be much larger than the number of witnesses Cougar Sport would have to transport to Oregon.  Likewise, adidas's larger size means the number of documents (and other materials) that adidas would need to transport to New York would be much larger than the number Cougar Sport would need to transport to Oregon.  *See*

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Vanderhoff Decl. ¶¶ 3, 4. For example, during the *Payless* case, of the seventeen (17) adidas employees who were deposed, all but one were deposed in Portland, Oregon, and all but one of the nine (9) fact witnesses adidas called at trial lived in Portland at the time. *See id.* ¶ 4.

If Cougar Sport's Motion were granted, all of these individuals would have to travel to New York for trial. By contrast, because Cougar Sport has only four (4) employees, it would, at the very most, need to transport four (4) individuals to Oregon for trial; but far more likely, Cougar Sport would need to transport only one or two of its employees, if any.[11] Similarly, adidas would need to transport a substantial volume of documents and other materials to New York—including its approximately 100 banker's boxes of documents and other materials related to the Three-Stripe Mark located in Portland, Oregon—whereas Cougar Sport, given its relatively small operation, presumably has a relatively small volume of documents it will need to transport to Oregon. *See id.* ¶ 3; Feldman Decl. ¶ 2.

In light of these facts, a transfer of this action would amount *solely* to a reallocation of litigation burdens, which is *not* a permissible basis on which a motion to transfer may be granted. *See Wilwerding*, 2008 WL 4388713, at *4 ("A transfer will not be ordered if the result is merely to shift the inconvenience from one party to another."); *Vestas-Am. Wind, Tech., Inc. v. Beaird Co., Ltd.*, Civ. No. 07-1651 PK, 2008 WL 4164551, at *9 (D. Or. Sept 3, 2008) ("A court will not grant a transfer that merely shifts the inconvenience from the defendant, rather than eliminates the inconvenience altogether."); *Buckman v. Quantum Energy Partners IV, LP*, No. 07-CV-1471-BR, 2008 WL 2235234, at *10 (D. Or. May 29, 2008) ("Merely shifting rather than eliminating the inconvenience is not a grounds for transfer of venue.") (quotations and citations omitted); *Oregon Precision Indus.*, 889 F. Supp. at 419 (denying motion to transfer for convenience when witnesses and evidence were in both Oregon and California because "transfer of this action would merely shift the inconvenience from one party to the other"); *Decker Coal*,

---

[11] As discussed below, it is possible that the testimony of all of Cougar Sport's potential trial witnesses could be presented via video in light of the fact that the depositions of all of its witnesses will be videotaped.

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

805 F.2d at 843 (upholding the district court's denial of a discretionary transfer, expressly noting that certain witnesses were in the requested venue and other witnesses were in the original venue, so the transfer "would merely shift rather than eliminate the inconvenience").

Moreover, the contacts adidas maintains in the Southern District of New York are not of the type or quality that would make litigating in that forum *any* more convenient to adidas, and they certainly do not amount to *clear and convincing* evidence that the balance of convenience strongly favors New York, which is what Cougar Sport must show. Cougar Sport glosses over the fact that the adidas locations it references in its Motion are *retail* locations. *See* Vanderhoff Decl. ¶ 5. Accordingly, *none* of those retail locations maintain documents relevant to this matter, and *no* employees from those retail locations will be called as witnesses. *Id*. Rather, all of adidas's U.S. operations are directed out of its headquarters *in Portland, Oregon*, and all relevant documents concerning licensing, manufacturing, advertising, and retail sales are housed in adidas's *Portland offices* (or the offices of adidas's counsel *in Portland, Oregon*). *See id.* ¶¶ 3-5; Feldman Decl. ¶ 2. Thus, while adidas does have some contacts in the Southern District of New York, those contacts do not in any way minimize the substantial burden adidas would face if it were forced to litigate this matter in that District.[12]

### 3. The Private Factors Weigh In Favor Of The District Of Oregon

The balance of the private factors tips decisively in adidas's favor. For purposes of a convenience-based motion to transfer, relevant private factors include: (1) access to documents; (2) witness availability; (3) viewing the premises, if appropriate; and (4) all other practical problems that make trial of a case easy and expeditious. *See Decker Coal*, 805 F.2d at 843.

---

[12] Cougar Sport argues that adidas has been a party to a number of cases in the Southern District of New York. But examining Cougar Sport's evidence in this regard reveals that the PACER records show that most of these cases are decades old, and many of them were filed before adidas moved its headquarters from the greater New York City area to Oregon over 20 years ago. *See* ECF No. 31-1 (Frank Decl., Ex. A). These dated cases hardly support the proposition that adidas presently litigates in the Southern District of New York with any regularity, or that New York is a convenient forum for adidas.

### a.    Witness Availability And Access To Documents

To support transfer based on convenience of witnesses and access to proof, Cougar Sport must provide specific information in the form of affidavits or declarations, identifying the key witnesses and their location and providing a generalized statement of their anticipated testimony and its relevance to the case.  *See Commodity Futures Trading Comm'n*, 611 F.2d at 279 ("[Defendant] had the burden to justify by particular circumstances that the transferor forum was inappropriate."); *E. & J. Gallo Winery*, 899 F. Supp. at 467 (denying defendant's motion to transfer where defendant's witnesses were "not identified and their anticipated testimony [was] not . . . presented to the Court in the form of required affidavits or declarations").

It is worth noting that no witness would be required to travel during the discovery period, since adidas's counsel will be traveling to the deponents' locations for any depositions.  *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1363 (N.D. Cal. 2007) ("Depositions are not a factor since they usually occur where witnesses reside anyway.").  Furthermore, adidas anticipates videotaping those depositions and presenting testimony from those witnesses at trial via video.  *See* Vanderhoff Decl. ¶ 6.  Thus, while Cougar Sport argues in general terms that its witnesses will be inconvenienced, it fails entirely to provide the necessary information concerning their anticipated testimony and why they would be needed to appear in person at trial.

Further, the information Cougar Sport provides about anticipated witnesses does not weigh in favor of transfer.  For example, Cougar Sport contends it only has a handful of employees, and they are located in New York.  "Courts, however, give little weight to the convenience of witnesses who are employees of the party seeking transfer because the party will be able to compel the witness testimony at trial."  *See Vestas-Am. Wind, Tech., Inc.*, 2008 WL 4164551, at *9; *accord STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) ("Moreover, defendant's claim that defense witnesses could not be expected to appear at trial must be discounted since at least four of the six witnesses are defendant's employees whom defendant can compel to testify.").

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In short, Cougar Sport fails to identify:  (i) the nature or scope of their witnesses' proposed testimony; (ii) why it is assumed they would be unwilling to provide testimony in Oregon; (iii) why their live testimony at trial is deemed essential; and (iv) why reliance on deposition transcripts or video would not be sufficient for purposes of trial.  Even if such specifics had been provided, Cougar Sport could not have satisfied its heavy burden of showing that a transfer of this case is warranted, but the absence of such specifics makes the otherwise inescapable conclusion that much more plain.  Indeed, as stated in a leading treatise:

> If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the motion to transfer should be denied.

15 Wright, Miller, & Cooper, FED. PRACTICE & PROC. § 3851 (3d ed. 2015) (collecting cases).

With respect to Cougar Sport's documents, for this factor to be given any weight, it "must establish the location of the documents in question, their importance to the resolution of the case, and the inability to move or copy them easily."  *Id.* § 3853.  Cougar Sport utterly has failed to do so.  By contrast, adidas has shown that all of the relevant documents it will produce in discovery and use at trial are located in Oregon, and no such documents are located in New York or elsewhere.  *See* Vanderhoff Decl. ¶¶ 3-5; Feldman Decl. ¶ 2.  The fact of the matter is that it would be much more burdensome for adidas to transport its large quantity of documents to New York than it will be for Cougar Sport to transport its relatively small quantity of documents to Oregon.

What's more, in light of modern technology and electronic storage of documents, transporting Cougar Sport's documents to Oregon cannot be given serious weight in the transfer analysis.  *See Unicru, Inc. v. Brenner*, No. Civ. 04-248-MO, 2004 WL 785276, at *10 (D. Or. Apr. 13, 2004) (holding that "because modern advances in communication and transportation have significantly reduced the burden of litigating in a distant forum," this factor is not given substantial weight) (internal citation and quotation marks omitted); *Van Slyke*, 503 F. Supp. 2d

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

at 1362 ("With technological advances in document storage and retrieval, transporting documents does not generally create a burden."); *STX, Inc.*, 708 F. Supp. at 1556 ("[T]he location of Defendant's records in Florida falls woefully short of the grounds necessary to justify superseding the plaintiff's choice of forum.").

In sum, because Cougar Sport is not "grossly inconvenienced by having to travel to Oregon" to litigate this dispute, its Motion should be denied. *See Flavor Organics, Inc.*, 2002 WL 31478148, at *6; *Oregon Precision Indus., Inc.*, 889 F. Supp. at 419 (denying motion to transfer to California where evidence and witnesses were located in both California and Oregon; holding that the transfer "would merely shift the inconvenience from one party to the other").

### b.     Other Private Considerations

Damage from Cougar Sport's infringement of the Three-Stripe Mark is felt most acutely in Oregon. The Ninth Circuit has long recognized that trademark infringement "is akin to a tort case," and, as a result, the "brunt of the harm" of the infringement is suffered at the plaintiff's principal place of business. *See Panavision*, 141 F.3d at 1321. Oregon is where adidas's operations are headquartered, the location of its principal place of business, and where its U.S. operations relating to the design, promotion, and enforcement of its Three-Stripe Mark occur. *See* Vanderhoff Decl. ¶ 2. Given the nature of adidas's claims, this case should be resolved where the injury is most directly felt.[13]

### 4.     The Public Factors Weigh In Favor Of The District Of Oregon

Judge Rakoff in the Southern District of New York already implicitly rejected Cougar Sport's argument that the interests of justice favor transfer to New York. Consistent with that ruling, the interests of justice strongly favor keeping this action in the District of Oregon. In

---

[13] Contrary to Cougar Sport's naked assertion that adidas "has a substantial presence in New York," adidas's presence in New York is limited to retail store locations. But none of these locations have any information or documents relevant to this dispute, and none of adidas's witnesses in this case live or work in New York. *See* Vanderhoff Decl. ¶ 5.

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

considering whether a requested convenience-based transfer would serve the interests of justice, the Court should consider the following factors:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Decker Coal*, 805 F.2d at 843 (quotation marks omitted).  Each of the relevant public factors favors litigating this action in Oregon.

### a.    Administrative Difficulties Flowing From Court Congestion

Cougar Sport's argument that New York is a superior forum to this Court is further undercut by the fact that the docket in the Southern District of New York is more congested than the docket in the District of Oregon.  According to the most recent federal judicial caseload statistics, as of June 30, 2013, there were a total of 18,774 cases pending in the Southern District of New York, whereas there were a total of 3,028 cases pending in the District of Oregon as of that same date.  *See* Feldman Decl. ¶ 11, Ex. 12.  Given these statistics, the goal of a speedy and efficient determination of this action will be best served by keeping the case in Oregon.

### b.    Interest In Having Localized Controversies Decided At Home

adidas's North American headquarters are in Portland, Oregon, and Oregon has an interest in resolving actions involving its residents.  *See Vestas-Am. Wind, Tech. Inc.*, 2008 WL 4164551, at *10 (public factors favored keeping the action in Oregon where the plaintiff was headquartered in Oregon and the threat that gave rise to the action occurred in Oregon).  In addition, and as discussed above, because this is a trademark case and adidas, the owner of the famous Three-Stripe Mark, has its North American headquarters in Oregon, the greatest amount of harm is felt in Oregon.  S*ee Panavision Int'l*, 141 F.3d at 1321.

Admittedly, New York also has an interest in this action because Cougar Sport is a New York entity with its principal place of business in New York.  But Cougar Sport does not limit its

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

business to New York.  It admits its apparel is marketed and sold nationally, including to Oregon residents and other consumers outside of New York.  *See* Dayan Decl. ¶ 8; Feldman Decl., Exs. 5-11.  As a result, New York's interest in this action is no stronger than Oregon's interest, and likely far less strong in light of the fact that the greatest amount of harm from the infringing conduct is felt in Oregon.

### c.      The Interest Of The Law That Governs

adidas has asserted claims of trademark infringement, unfair competition, and trademark dilution.  *See* ECF No. 1, ¶¶ 38–60.  Thus, this case will be determined primarily by federal law.  *See* 15 U.S.C. §§ 1114, 1125.  adidas also has asserted state law claims, including common law trademark infringement under Oregon law.  Accordingly, this Court is just as equipped to decide the various state law claims as the Southern District of New York.  It follows that this factor is either neutral or favors the District of Oregon.

### d.      The Unfairness Of Burdening Citizens In An Unrelated Forum With Jury Duty

Finally, Oregon is far from an unrelated forum; in fact, adidas America is headquartered in Portland, Oregon, and it employs hundreds of Portland residents.  *See* Vanderhoff Decl. ¶ 2.  Additionally, the bulk of the harm from Cougar Sport's infringing conduct is felt in Oregon.  Thus, serving on a jury in this case will not pose an unfair burden on Oregon citizens.  *See Van Slyke*, 503 F. Supp. 2d at 1365-66 (finding citizens would not be burdened by jury duty where the jurisdiction at issue has a greater interest in adjudicating the dispute than the alternative court).

In short, the private and public factors tilt decidedly in favor of keeping this action in Oregon.  Cougar Sport's request to transfer this case amounts to little more than an attempted second bite at the apple to have this case litigated in New York.  Cougar Sport's request to relieve it of a perceived inconvenience of litigating in Oregon would actually impose an even greater inconvenience on adidas.  For these reasons, and all of those provided above, Cougar

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Sport's arguments do not come close to satisfying its heavy burden of clearly and convincingly showing that the balance of the convenience factors strongly favors usurping adidas's choice of forum.  Therefore, Cougar Sport's request to transfer this case should be denied.

## IV.    CONCLUSION

For all of the foregoing reasons, adidas respectfully requests that this Court deny Cougar Sport's Motion.

DATED:  November 19, 2015

**PERKINS COIE LLP**

By: s/ Stephen M. Feldman
    Stephen M. Feldman, OSB No. 932674
    SFeldman@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

R. Charles Henn Jr. (admitted *pro hac vice*)
chenn@kilpatricktownsend.com
Charles H. Hooker III (admitted *pro hac vice*)
chooker@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone:  404.815.6500
Facsimile:  404.815.6555

Attorneys for Plaintiffs

30-  OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
    PERSONAL JURISDICTION AND IMPROPER VENUE, OR, IN THE
    ALTERNATIVE, TRANSFER OF THIS CASE TO THE SOUTHERN
    DISTRICT OF NEW YORK
21184-0110/LEGAL128708984.1

**Perkins Coie** LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222