IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC., a Delaware corporation; and ADIDAS AG, a foreign entity**, | Case No. 3:15-cv-01856-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **COUGAR SPORT, INC., a New York corporation**, | |
| Defendant. | |

Stephen M. Feldman, PERKINS COIE, LLP, 1120 N.W. Couch Street, Tenth Floor, Portland, OR 97209; R. Charles Henn Jr. and Charles H. Hooker III, KILPATRICK TOWNSEND & STOCKTON, LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309. Of Attorneys for Plaintiffs.

Kenneth R. Davis II and Parna A. Mehrbani, LANE POWELL, PC, 601 S.W. Second Avenue, Suite 2100, Portland OR 97204; Anthony F. LoCicero and William M. Frank, AMSTER, ROTHSTEIN & EBENSTEIN, LLP, 90 Park Avenue, New York NY 10016. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In this lawsuit, adidas America, Inc. and adidas AG (collectively, "Adidas") allege claims of trademark infringement, unfair competition, trademark dilution, and deceptive trade practices against Cougar Sport, Inc. ("Cougar Sport"). Cougar Sport has moved to dismiss the case for lack of personal jurisdiction and improper venue, or, alternatively, to transfer venue to the Southern District of New York. Dkt. 29. For the following reasons, Cougar Sport's motion is denied.

PAGE 1 – OPINION AND ORDER

## STANDARDS

### A.  Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). When the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Boshetto*, 539 F.3d at 1015 (quotation marks and citation omitted). In resolving the motion on written materials, the court must "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (alteration in original) (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). A plaintiff cannot solely rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Id.* "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

### B.  Improper Venue

On a motion to dismiss for improper venue brought pursuant to Fed. R. Civ. P. 12(b)(3), a "defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer under 28 U.S.C. § 1406(a)." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). 28 U.S.C. § 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The plaintiff bears the burden of showing that venue is

proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California.").

## C. Transfer Venue

On a motion to transfer venue brought pursuant to 28 U.S.C. § 1404(a), a court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The forum to which transfer of venue is sought must be a district court where the case "might have been brought." *Id*. Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted); *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

## BACKGROUND

Plaintiff adidas America, Inc. is a Delaware corporation, and Plaintiff adidas AG is a German company. adidas America, Inc., the principal distributor of adidas AG's merchandise, is headquartered and maintains its principal place of business in Portland, Oregon. Adidas manufactures and sells apparel and footwear bearing its "Three Stripe" trademark. Cougar Sport is a New York corporation with its principal place of business in New York City, New York. Cougar Sport is a small company with four employees, including its President, Raymond Dayan. Cougar Sport manufactures athletic wear, which it sells on an international scale. Cougar Sport's merchandise can be found at stores such as Ross Stores, Inc. and Burlington Coat Factory, both of which have retail locations in Portland, Oregon. Cougar Sport additionally sells its merchandise online, including through its own website, cougarsportinc.com; Amazon.com; and

eBay.com. Cougar Sport has knowingly sold five items to buyers located in Oregon.[1] Two of the buyers purchased the merchandise through Amazon.com. The third buyer used eBay.com.

Adidas's claims arise out of the "2 Pipe / 2 Stripe" design for apparel used on Cougar Sport's manufactured goods. Adidas alleges that Cougar Sport's "2 Pipe / 2 Stripe" design is a confusingly similar imitation of Adidas's trademarked "Three-Stripe" mark. Adidas alleges that Cougar Sport intentionally adopted its "2 Pipe / 2 Stripe" design to trade on the goodwill associated with Adidas's "Three-Stripe" mark and that the alleged imitation has diluted Adidas's "Three-Stripe" mark and caused Adidas substantial injury.

Adidas brings the following claims against Cougar Sport: (1) federal trademark infringement, in violation of 15 U.S.C. § 1114; (2) false representation, false description, and false designation, in violation of 15 U.S.C. § 1125(a); (3) unfair and deceptive trade practices, in violation of the statutes of several states including California, Colorado, Delaware, Georgia, Hawaii, Illinois, Maine, Minnesota, Nebraska, New Mexico, New York, Ohio, and Oklahoma; (4) common law trademark infringement and unfair competition; (5) and federal trademark dilution, in violation of 15 U.S.C. § 1125(c).

## DISCUSSION

Cougar Sport asserts three arguments in its motion. First, Cougar Sport argues that this case should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Second, Cougar Sport argues that this case should be dismissed or transferred to the Southern District of New York under Fed. R. Civ. P. 12(b)(3) because venue is improper in this District. Third, Cougar Sport argues that the Court, alternatively, should exercise its discretion under 28 U.S.C.

---

[1] Cougar Sport is the successor-in-interest to Cougar International, Inc., which was founded in 1983. Cougar Sport's historical sales records go back only to 2011. Dkt. 30 ¶¶ 2, 10.

§ 1404(a) to transfer this case to the Southern District of New York. Each argument is addressed in turn.

## A.  Personal Jurisdiction

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See CollegeSource, Inc.*, 653 F.3d at 1073 (citing Fed. R. Civ. P. 4(k)(1)(A)). Oregon's long-arm statute is co-extensive with constitutional standards. *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, 2015 WL 7185463, at *2 (D. Or. Nov. 13, 2015) (citing Or. R. Civ. P. 4(L)). Thus, this Court need only determine whether its exercise of personal jurisdiction over Cougar Sport would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *see also Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982).

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id*. at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to ensure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citing *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). If the court lacks general personal

jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-74. Although Adidas speculates that "Cougar Sport's activities may well rise to the level of 'continuous and systematic' contacts necessary to support a finding of general jurisdiction," Adidas argues that this Court has specific jurisdiction over Cougar Sport. Dkt. 32 at 15.

The Ninth Circuit applies a three-part test to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden on the first two prongs, but if both are established, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012); *Brayton Purcell*, 606 F.3d at 1128. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction

analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). Because Adidas's trademark infringement claims arise in tort, this Court applies the purposeful direction analysis. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:7 (4th ed. 2008) (characterizing trademark infringement as a commercial tort).

### 1. Purposeful Direction

Ninth Circuit courts use a three-part test (the "effects test") from the Supreme Court's opinion *Calder v. Jones*, 465 U.S. 783 (1984), to evaluate purposeful direction in trademark claims.[2] *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 119, 1206 (9th Cir. 2006) (en banc)).

---

[2] Adidas also argues that in addition to the effects test, it can demonstrate that personal jurisdiction is proper because Cougar Sport has placed infringing merchandise into the stream of commerce, including through retailers like Ross Stores, Inc. and Burlington Coat Factory. Dkt. 32 at 22-23. Adidas cites *Patent Enforcement Group, LLC v. Chassis Tech., LLC*, 2012 WL 12678 (D. Or. Jan. 3, 2012), in which the court held that the defendant's conduct constituted purposeful availment of the forum where the defendant "made more-than-sporadic direct sales [totaling 99 items] to Oregon retailers and wholesalers in anticipation that the allegedly infringing products would be sold to customers in Oregon." *Id.* at *5. For tort actions such as this one, however, courts in the Ninth Circuit generally use the effects test. *See Washington Shoe Co.*, 704 F.3d at 672-73 ("[I]n tort cases, we typically inquire whether a defendant purposefully direct[s] his activities at the forum state, applying an effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.") (quotation marks omitted) (second alteration in original). Because the Court finds that personal jurisdiction is proper under the effects test, the Court does not reach Adidas's additional stream of commerce argument.

### a. Intentional Act

Under the first prong of the effects test, Adidas must demonstrate that Cougar Sport committed an "intentional act." In the context of the effects test, an "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Washington Shoe*, 704 F.3d at 674. Adidas alleges that Cougar Sport has intentionally adopted and used an imitation of Adidas's "Three Stripe" mark on its apparel knowing that it would mislead and deceive consumers into believing that the apparel originated with Adidas. Additionally, there is evidence in the record that Cougar Sport sold allegedly infringing merchandise to Oregon customers. By manufacturing and selling the allegedly infringing merchandise, Cougar Sport has committed an "intentional act" within the meaning of the effects test. Thus, the first prong of this test is satisfied. *See id.* (finding the first prong satisfied where the defendant sold merchandise that allegedly infringed upon the plaintiff's copyright).

### b. Expressly Aimed

Under the second prong of the effects test, Adidas must demonstrate that Cougar Sport expressly aimed its actions at the forum state. The Ninth Circuit has "emphasized that 'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, . . . and that 'something more' means conduct expressly aimed at the forum." *Brayton Purcell*, 606 F.3d at 1129 (first alteration in original) (citations omitted).

Adidas argues, in part, that the aiming prong of the effects test is satisfied because Cougar Sport maintains an interactive and commercial website that is accessible to Oregon residents. "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011). Courts in the Ninth Circuit "typically examine the 'level of interactivity and commercial nature of the exchange of information that occurs on the website to

PAGE 8 – OPINION AND ORDER

determine if sufficient contacts exist to warrant the exercise of jurisdiction.'" *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *4 (N.D. Cal. Aug. 2, 2012) (quoting *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997)).

Here, the parties do not dispute that Cougar Sport's website is interactive and commercial in nature, as Cougar Sport advertises and sells its merchandise through the website. Adidas, however, has not presented any evidence or allegation that Cougar Sport has had contact with Oregon residents through its website. *Cf. Tech Heads, Inc. v. Desktop Serv. Cntr., Inc.*, 105 F. Supp. 2d 1142, 1150-51 (D. Or. 2000) (finding personal jurisdiction proper where the plaintiff presented evidence of a transaction involving an Oregon resident made through the defendant's interactive website); *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1371-72 (N.D. Ga. 2013) (finding that defendant's interactive website and small amount of sales in the forum state made through the website were sufficient for purposeful availment). Additionally, there is no evidence or allegation in the record that the website specifically targets residents of Oregon. *Cf. Mavrix*, 647 F.3d at 1230 (finding the aiming prong of the effects met where the defendant operated a website with a specific focus on industries centered in the forum state). Thus, Cougar Sport's website, by itself, is insufficient to satisfy the express aiming requirement of the effects test. *See Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 923 (D. Or. 1999) (declining to find personal jurisdiction based on an interactive website when there was no evidence of transactions with forum residents or evidence that the forum was targeted).

The Ninth Circuit has repeatedly stated, however, that "'operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction.'" *Brayton Purcell*, 606 F.3d at 1129 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). Cougar Sport does not dispute that it has

sold its allegedly infringing merchandise to consumers located in Oregon. Cougar Sport argues, however, that sales to forum customers made through third-party seller platforms such as Amazon.com and eBay.com do not support the exercise of personal jurisdiction. In *Boschetto v. Hansing*, the Ninth Circuit considered whether the sale of car through eBay.com provided sufficient minimum contacts between the defendant and the buyer's home state, California, to support the exercise of personal jurisdiction. 539 F.3d at 1014. The Ninth Circuit concluded that it did not, reasoning that the purchase "was a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside." *Id.* at 1019.

> The Ninth Circuit noted, however, that:
>
> > Where eBay is used as a means for establishing regular business with a remote forum such that a finding of personal jurisdiction comports with 'traditional notions of fair play and substantial justice,' *International Shoe, Co.*, 326 U.S. at 316, 66 S.Ct. 154, then a defendant's use of eBay may be properly taken into account for purposes of establishing personal jurisdiction.

*Id.* Here, Cougar Sport uses not only eBay.com but also Amazon.com and its own website to market and sell its merchandise throughout the United States. Thus, Cougar Sport uses the third-party seller platforms as "broader vehicle[s] for commercial activity." *Id.* Cougar Sport has also used its online selling platforms as a means for establishing business in Oregon. *See id.*

Cougar Sport argues that the three transactions made with Oregon customers are *de minimis* and too small to support personal jurisdiction, citing *Tuna Processors, Inc. v. Anova Food, Inc.*, 2007 WL 3232609 (D. Or. Nov. 1, 2007). In *Tuna Processors*, the court held that two sales of allegedly infringing tuna products made through the defendant's website "were random and fortuitous contacts rather than the result of purposeful conduct directed at [the] forum." *Id.* at *4; *cf. Benchmade Knife Co., Inc. v. Benson*, 2010 WL 988465, at *5 (D. Or. Mar. 15, 2010)

(finding personal jurisdiction proper despite a small amount of Oregon sales where the defendant's interactive website advertised its Oregon connections). The district court case law on this point may be conflicting, as Adidas points to *Tech Heads, Inc. v. Desktop Service Center, Inc.*, where the court held that it had personal jurisdiction over a nonresident defendant because the plaintiff "presented evidence of a highly interactive Web site and one actual transaction involving an Oregon resident." 105 F. Supp. 2d at 1150. Thus, the case law is unclear as to whether a highly interactive website, combined with a small amount of sales into the forum, is sufficient to establish that the defendant engaged in "conduct expressly aimed at the forum." *Brayton Purcell*, 606 F.3d at 1129.

Adidas, however, argues that the express aiming prong may be satisfied under another theory as well. The Ninth Circuit has "repeatedly stated that the 'express aiming' requirement is satisfied, and specific jurisdiction exists, 'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Washington Shoe*, 704 F.3d at 675 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (concluding that "'express aiming' encompasses wrongful conduct individually targeting a known forum resident."). Adidas argues that the express aiming prong is satisfied because Cougar Sport intentionally engaged in tortious conduct targeted at Adidas, whom Cougar Sport knows to be a forum resident.[3]

Adidas cites *Bancroft & Masters, Inc. v. Augusta National Inc.* in support of its argument. In *Bancroft*, the plaintiff, a California corporation, alleged that the defendant sent a letter to the plaintiff in California demanding that the plaintiff cease and desist its use of a

---

[3] The Court notes that Cougar Sport did not respond to this argument either in its briefing or at oral argument.

domain name and transfer it immediately to the defendant. *Id.* at 1084-85. The defendant also

sent a letter to Network Solutions, Inc. ("NSI"), at the time the sole registrar of domain names in

the United States, challenging the plaintiff's use of the domain name. *Id.* The defendant's letter

to NSI triggered NSI's dispute resolution policy, under which the plaintiff had three options:

(1) voluntarily transfer the name to the defendant; (2) allow the domain name to be placed on

hold such that it could not be used by either party; or (3) obtain a declaratory judgment

establishing its right to use the domain name. *Id.* at 1085. The plaintiff chose the third option,

filing declaratory judgment action against the defendant in California. *Id.* The defendant moved

to dismiss for lack of personal jurisdiction. *Id.*

      The plaintiff alleged in its complaint that the defendant sent the letter to NSI in order

deliberately to trigger NSI's dispute resolution procedures and thus wrongfully to interfere with

the plaintiff's use of its domain name. *Id.* at 1087. Applying the theory that the express aiming

"requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct

targeted at a plaintiff whom the defendant knows to be a resident of the forum state," the Ninth

Circuit found that the district court properly exercised specific personal jurisdiction over the

defendant. *Id.* at 1087-88.

      In *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, the Ninth Circuit applied the same

theory and reversed the district court's dismissal for lack of personal jurisdiction, holding, in

part, that the defendant's "alleged willful infringement of [the plaintiff's] copyright, and its

knowledge of both the existence of the copyright and the forum of the copyright holder, is

sufficient 'individualized targeting' to establish the 'something more' necessary to satisfy the

express aiming requirement." 704 F.3d at 678-79; *see also Panavision*, 141 F.3d at 1322

(holding that the effects test is satisfied where "[the plaintiff] engaged in a scheme to register

[the defendant's] trademark as his domain names for the purpose of extorting money from [the plaintiff]. His conduct, as he knew it likely would, had the effect of injuring [the defendant] in California where [the defendant] has its principal place of business and where the movie and television industry is centered.").[4]

---

[4] District courts in the Ninth Circuit disagree about the continuing viability of the theory that a plaintiff may satisfy the express aiming prong by alleging that the defendant targeted a known forum resident after the Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *Compare Adobe Sys., Inc. v. Cardinal Camera & Video Cntr.*, 2015 WL 5834135, at *3-5 (N.D. Cal. Oct. 7, 2015) (rejecting the plaintiff's argument that the express aiming prong was satisfied by the defendant's alleged intentional targeting of the plaintiff in a trademark action because "*Washington Shoe* cannot be reconciled with *Walden* and . . . *Walden* effectively overrules *Washington Shoe.*"), *and Erickson v. Neb. Machinery Co.*, 2015 WL 4089849, at *3 (N.D. Cal. July 6, 2015) (finding that *Walden* "rejected the idea, inherent in *Washington Shoe*, that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis") *with Exobox Techs. Corp. v. Tsambis*, 2015 WL 82886, at *5-6 (D. Nev. Jan. 6, 2015) ("Until a higher court overrules it, *Bancroft* is still the law of this Circuit and binds this Court. Because *Bancroft* is more analogous—and *Walden* is distinguishable—from the instant case, this Court must apply *Bancroft.*"), *and Leibman v. Prupes*, 2015 WL 898454, at *9 (C.D. Cal. Mar. 2, 2015) (declining to hold that *Walden* overruled the *Bancroft* line of cases).

In *Walden*, the Court stated that in the minimum contacts inquiry, "the plaintiff cannot be the only link between the defendant and the forum." 134 S. Ct. at 1122. *Walden* involved a *Bivens* action resulting from an interaction in the Atlanta airport between a DEA agent and two professional gamblers on their way to Las Vegas. The Ninth Circuit had found that Nevada could exercise personal jurisdiction over the DEA agent for his actions in Georgia because "petitioner 'expressly aimed' his submission of [an] allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id.* at 1120. The Supreme Court reversed, emphasizing that the "proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" *Id.* at 1126 (quoting *Calder*, 465 U.S. at 788).

"The Ninth Circuit itself has not decided whether, and to what extent, *Walden* overruled prior Ninth Circuit precedent." *Adobe Sys.*, 2015 WL 5834135, at *4. *Walden* may be factually distinguishable from trademark and copyright cases, such as the action here. Additionally, Adidas is not the only connection between Cougar Sport and this forum, as Cougar Sport has sold merchandise to forum residents. Finally, Cougar Sport did not raise the argument that *Walden* calls into question the line of Ninth Circuit cases stating that "the 'express aiming' requirement is satisfied, and specific jurisdiction exists, 'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Washington Shoe*, 704 F.3d at 675 (quoting *Dole Food*, 303 F.3d at 1111); *see also Bancroft*, 223 F.3d at 1087. The Court declines to reach the issue *sua sponte*.

Adidas alleges that Cougar Sport's "2 Pipe / 2 Stripe" design is a confusingly similar imitation of Adidas's "Three-Stripe" mark, and that Cougar Sport intentionally adopted its "2 Pipe / 2 Stripe" design to benefit from the goodwill associated with Adidas's brand. Adidas alleges that Cougar Sport knew that its use of the "2 Pipe / 2 Stripe" design would mislead and deceive customers into believing that the merchandise was produced or authorized by Adidas, and that Cougar Sport's intentional actions result in substantial injury to Adidas's goodwill and reputation. Cougar Sport does not deny knowledge of Adidas's location in this forum, and thus likely knew that Adidas would suffer harm in Oregon. *See Panavision*, 141 F.3d at 1321.

Under *Bancroft*, *Washington Shoe*, and *Panavision*, these alleged facts are sufficient to establish that Cougar Sport purposefully directed its allegedly infringing activities at Oregon, knowing that the brunt of the harm would be suffered in this forum. *See Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1107 (C.D. Cal. May 22, 2007) (finding the purposeful direction test satisfied where the defendants willfully infringed upon the plaintiff's copyrights and the plaintiff alleged that the defendants "must have known it was located in California"). Additionally, Cougar Sport sold allegedly infringing merchandise directly into the forum state, albeit on a small scale, and maintains a highly interactive, commercial website accessible to Oregon residents.[5] The Court concludes that Adidas has alleged facts sufficient to establish that Cougar Sport's actions had more than "mere" foreseeable effects in the forum, and that Cougar

_____

[5] Adidas also asserts that Cougar Sport has two additional, significant contacts with Oregon relevant to the express aiming analysis: (1) Cougar Sport sends invoices to Ross Stores, Inc.'s billing department in Portland; and (2) Cougar Sport sells its merchandise to Ross Stores, Inc. and Burlington Coat Factory, both of which have retail stores in Portland. Dkt. 32 at 19. Ross Stores, Inc. is a Delaware corporation with California headquarters. Adidas does not cite any authority for the proposition that sending invoices to Ross Stores, Inc.'s Portland billing department is relevant to the express aiming prong of the effects test. Additionally, there is no evidence in the record that Cougar Sport merchandise is or has been sold at the Oregon locations of either Ross Stores, Inc. or Burlington Coat Factory. Accordingly, this argument does not help Adidas.

Sport's conduct was "expressly aimed" at Oregon. *See Brayton Purcell*, 606 F.3d at 1129 (quotation marks omitted). Thus, Adidas has satisfied the second prong of the effects test.

### c.  Foreseeable Harm

Under the third prong of the effects test, Adidas must demonstrate that Cougar Sport's "conduct caused harm that it knew was likely to be suffered in the forum." *Id.* at 1131. "This element is satisfied when a defendant's intentional act has 'foreseeable effects' in the forum." *Id.* "The 'brunt' of the harm need not be suffered in the forum state," and this element may be established even if "the bulk of the harm" occurs outside the forum. *Yahoo! Inc.*, 433 F.3d at 1207. As noted above, Cougar Sport does not deny knowledge of Adidas's location in Oregon. Thus, it was foreseeable that Adidas would be harmed by the alleged trademark infringement, including harm to Adidas's goodwill and reputation. Additionally, Cougar Sport sold its allegedly infringing merchandise to forum residents. Accordingly, the Court finds that Adidas has satisfied the third prong of the effects test.

### 2.  Arising Out of Forum-Related Activities

The second requirement for the Court to exercise specific personal jurisdiction "is that the claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision*, 141 F.3d at 1322. The Ninth Circuit applies a "but for" test under which the Court must determine whether the plaintiff would not have suffered injury "but for" the defendant's forum-related conduct. *Id.*; *see also Planned Parenthood v. Am. Coalition of Life Activists*, 945 F. Supp. 1355, 1368 (D. Or. 1996) (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)) ("The 'but for' test should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum."). Generally, the resolution

of this prong relies heavily on the court's resolution of the minimum contacts prong.[6] *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1228 (discussing only the minimum contacts element); *Dole Food*, 303 F.3d at 1114 (same).

Adidas's claims are based on Cougar Sport's allegedly infringing use of its "2 Pipe / 2 Stripe" design on Cougar Sport's merchandise. Adidas alleges that Cougar Sport's intentional exploitation of Adidas's goodwill and diversion of Adidas's potential customers has substantially injured Adidas, a resident of the forum. As discussed above, there is evidence in the record that Cougar Sport sold its allegedly infringing merchandise to customers located in Oregon. Thus, Adidas's claims arise out of Cougar Sport's forum-related contacts. *See MCA Records, Inc. v. Charly Records Ltd.*, 108 F.3d 338, 1997 WL 76173, at *5 (9th Cir. 1997) (unpublished) (finding that the plaintiff's claims arose out of the defendant's forum-related activities in a trademark infringement action where some of the defendant's advertisement and sales activity was directed toward the forum state).

---

[6] The Court notes that the Oregon Supreme Court has recently rejected the "but for" test as "overinclusive." *Robinson v. Harley-Davidson Motor Co.*, 354 Or. 572, 589 (2013). The *Robinson* Court held as follows:

> [T]he relatedness standard requires that the litigation must arise out of, or relate to, at least one of a nonresident defendant's activities in this state for our courts to properly exercise specific jurisdiction. To meet that standard, the activity may not be only a but-for cause of the litigation; rather, the nature and quality of the activity must also be such that the litigation is reasonably foreseeable by the defendant.

*Id.* at 594. Adidas alleges that Cougar Sport engaged in tortious conduct intentionally aimed at Adidas, whom Cougar Sport knew to be a resident of Oregon. Additionally, Cougar Sport sold merchandise directly into this forum. Thus, there is "a basis for an objective determination that the litigation was reasonably foreseeable" to Cougar Sport, and the *Robinson* standard is met. *Id.*

### 3.  Reasonable and Fair to Assert Jurisdiction

Because the previous two requirements are met, a strong presumption of jurisdiction exists and Cougar Sport "must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (quoting *Burger King*, 471 U.S. at 477) (emphasis in original). Jurisdiction is unreasonable if it does not comport with the notion of fair play and substantial justice. *Burger King*, 471 U.S. at 476. The Ninth Circuit has identified seven specific factors to consider in making the reasonableness determination:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft*, 223 F.3d at 1088 (citation omitted).

### a.  Purposeful Interjection

If a court determines that a defendant has purposefully directed its actions at the forum state, as discussed above, then the purposeful interjection factor favors the plaintiff. *See CollegeSource*, 653 F.3d at 1080 ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection."). Accordingly, this factor favors jurisdiction.

### b.  Burden on Defendant

Cougar Sport argues that litigating this matter in Oregon would be a significant burden because Cougar Sport is a small company based in New York. Cougar Sport asserts that all of its employees are residents of New York, all of its witnesses are located in New York, and that all of its documents and records that would be relevant to this case are located in New York.

"'[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past.'" *Id.* (quoting *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007)). This factor slightly favors Cougar Sport.

### c.  Conflict with Sovereignty of Defendant's State

This factor concerns the extent of any risk that the Court's exercise of jurisdiction in Oregon might conflict with the sovereignty of New York, Cougar Sport's state of citizenship. *See Panavision*, 141 F.3d at 1323. Adidas asserts primarily federal claims. Although Adidas's claim for unfair and deceptive trade practices is brought under New York statutory law, Adidas also brings a claim for common law trademark infringement and unfair competition. Thus, this factor is neutral.

### d.  Forum's Interest in Adjudication

The Ninth Circuit assumes that a forum state "'maintains a strong interest in providing an effective means of redress for its residents tortuously injured.'" *Id.* (quoting *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996)). Accordingly, this factor favors jurisdiction.

### e.  Efficient Judicial Resolution

"This factor focuses on the location of the evidence and witnesses." *Id.* As with the factor considering the burden on the defendant, this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id.* Both parties assert that their evidence and witnesses are located in their respective home states. Thus, this factor is neutral.

### f.  The Convenience and Effectiveness of Relief for Plaintiff

If Oregon is not a proper forum, then Adidas would most likely be required to litigate this matter in the Southern District of New York. Although litigating in New York would most likely inconvenience Adidas, the Ninth Circuit does not give much weight to the plaintiff's

inconvenience. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995). Thus, this factor only slightly favors jurisdiction.

### g.  Existence of an Alternative Forum

The Southern District of New York is an alternative forum; however, the existence of an alternative forum only becomes an issue "when the [original] forum state is shown to be unreasonable." *See CollegeSource*, 653 F.3d at 1080 (quoting *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 n.19 (9th Cir. 2011), *overruled on other grounds by Daimler AG*, 134 S. Ct. 746). Cougar Sport has not established that Oregon is an unreasonable forum.

Weighing these seven considerations favors finding of personal jurisdiction in this District. Cougar Sport fails to present a compelling case that the exercise of jurisdiction would be unreasonable. Thus, the Court has specific jurisdiction over Cougar Sport. Accordingly, the Court denies Cougar Sport's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## B.  Proper Venue

Cougar Sport argues that venue is improper in this District and moves for dismissal or transfer of this case to the Southern District of New York under Fed. R. Civ. P. 12(b)(3). The general venue statute, 28 U.S.C. § 1391(b), governs trademark claims. *Kaia Foods, Inc. v. T.J. Bellafiore*, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014). Under 28 U.S.C. § 1391(b), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." In a suit alleging trademark infringement, "a 'substantial part' of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, 'whether that occurs solely in one district or in many.'" *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009) (quoting *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)); *see also Kaia Foods*,

PAGE 19 – OPINION AND ORDER

70 F. Supp. 3d at 1184 ("In a trademark infringement action, a substantial part of the events occur both where the labels are affixed and where confusion of purchasers is likely to occur.").

Consumer confusion "occurs where the passing off occurs, that is, where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Id.* (quotation marks omitted). Venue may be proper even where the defendant sells only a small amount of merchandise into the forum. *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599, at *4 n.2 (N.D. Cal. Mar. 23, 2005) (finding venue proper even though defendant's sales in the forum "appear[ed] to be relatively modest"). Cougar Sport has sold allegedly infringing merchandise to customers located in Oregon; thus, it is likely that Adidas's customers in this District have been confused by Cougar Sport's use of its "2 Pipe / 2 Stripe" design. Because consumers in this District are likely to be confused by the allegedly infringing merchandise, venue is proper under 29 U.S.C. § 1391(b). Accordingly, the Court denies Cougar Sport's motion to dismiss or transfer venue under Fed. R. Civ. P. 12(b)(3).

## C.  Transfer of Venue

Cougar Sport alternatively moves for transfer of venue under 28 U.S.C. § 1404(a) to the Southern District of New York. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is undisputed that this case could have been brought in the Southern District of New York,[7] so the Court considers the issues of the convenience of the parties and the interests of justice.

The inquiry under § 1404(a) is fact specific, and a "district court has discretion 'to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

---

[7] Because Cougar Sport resides in New York, New York, venue would be proper in the Southern District of New York. *See* 28 U.S.C. § 1391(b)(1).

convenience and fairness.'" *Jones*, 211 F.3d at 498 (quoting *Stewart Org. v. Ricoh Corp.*,

487 U.S. 22, 29 (1988)); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 3847 (4th ed. 2015) ("[T]he statute leaves a great deal to the discretion of the

trial judge."). "The defendant must make a strong showing of inconvenience to warrant upsetting

the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

843 (9th Cir. 1986).

A court must weigh multiple factors when considering a motion to transfer. *Jones*,

211 F.3d at 498. Factors to consider may include:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties'
> contacts with the forum, (5) the contacts relating to the plaintiff's
> cause of action in the chosen forum, (6) the differences in the costs
> of litigation in the two forums, (7) the availability of compulsory
> process to compel attendance of unwilling non-party witnesses,
> and (8) the ease of access to sources of proof. . . . We also
> conclude that the relevant public policy of the forum state, if any,
> is at least as significant a factor in the § 1404(a) balancing.

*Id.* at 498-99. The weight accorded to each factor varies with the facts of each case and is left to

the discretion of the court. *Decker Coal*, 805 F.2d at 843.

### 1. Location of Relevant Agreements

This factor is neutral because neither party has identified any relevant agreements.

### 2. State Most Familiar with Governing Law

Adidas asserts primarily federal claims, and both this District and the Southern District of

New York are equally capable of deciding such claims. Although Adidas's claim for unfair and

deceptive trade practices is brought under New York statutory law, Adidas also brings a claim

for trademark infringement and unfair competition under common law. Cougar Sport notes that

Adidas requests injunctive relief, and that a court located in New York would be better able to

administer and enforce an injunction against a New York company. *See Law Bulletin Pub., Co. v. LRP Pub., Inc.*, 992 F. Supp. 1014, 1020-21 (N.D. Ill. 1998) (finding transfer to Florida appropriate because, in part, "a Florida court is in a better position to enforce and monitor any injunctive relief awarded."). Thus, this factor weighs slightly in favor of transfer.

### 3. Plaintiff's Choice of Forum

This factor does not support transfer because Oregon is Adidas's forum of choice. Generally, this factor is given great weight. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). "The plaintiff's choice of forum is especially given deference where the plaintiff is a resident of the forum in which the action is brought." *Wilwerding v. Edwards*, 2008 WL 4388713, at *3 (D. Or. Sept. 26, 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). As Adidas has its United States headquarters and principal place of business in Oregon, the Court finds that this factor weighs heavily against transfer.

### 4. The Parties' Contacts with the Forum

Cougar Sport asserts that while it is located entirely within New York, Adidas has stores in Manhattan and has previously brought lawsuits in New York courts. Dkt. 29 at 11. As the Court discussed above, however, Cougar Sport has transacted business with Oregon residents online. Additionally, while Adidas may have retail locations in New York, Adidas asserts that those locations are irrelevant to this action as it will not call any of the employees from those stores as witnesses and the stores do not process or maintain any relevant documents. Finally, all of the previous lawsuits referenced by Cougar Sport were filed more than ten years ago. Thus, the Court finds that this factor is neutral.

### 5. Differences in Costs of Litigation

Neither party presents any evidence concerning how the costs of litigation would differ between the two forums. Thus, this factor is neutral.

### 6. Availability of Compulsory Process

Neither party has asserted that compulsory process will be needed in this matter. Thus, this factor is neutral.

### 7. Ease of Access to Sources of Proof

Cougar Sport asserts that all of its witnesses and records are located in New York, and that it would be inconvenient to transport the witnesses and documents to Oregon for hearings and trial. Adidas responds that its witnesses and records are located in Oregon, and that transfer of this case to New York would "merely shift rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843.

"The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in a ruling on a motion to transfer." 15 Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure* § 3851 (4th ed. 2015). As neither party identifies its witnesses with specificity, the Court finds it difficult meaningfully to evaluate the effect that a change of venue would have on any witnesses. Additionally, Adidas asserts its intent to videotape depositions during the discovery period and present testimony from those witnesses at trial by video recording. With regard to documents and records, "transporting documents does not generally create a burden" due to "technological advances in document storage and retrieval." *Reyes v. Bakery & Confectionary Union & Ind. Int'l Pension Fund*, 2015 WL 1738269, at *4 (N.D. Cal. 2015) (quotation marks omitted). The Court concludes that this factor is neutral.

### 8. Conclusion

Balancing these factors, most of which are neutral, the Court finds that Cougar Sport has not made a showing of inconvenience sufficient "to warrant upsetting the plaintiff's choice of

forum." *See Decker Coal*, 805 F.2d at 843. Accordingly, the Court denies Cougar Sport's motion to transfer venue under § 1404(a).

## CONCLUSION

Cougar Sport's motion to dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to transfer venue (Dkt. 29) is DENIED.

**IT IS SO ORDERED**.

DATED this 14th day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge